25cr349 MJD/JFD

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. MOKTAR HASSAN ADEN,
2. MUSTAFA DAYIB ALI,
3. KHALID AHMED DAYIB, and
4. ABDIFITAH MOHAMUD MOHAMED,

Defendants.

**INDICTMENT**

18 U.S.C. § 1343
18 U.S.C. § 981(a)(1)(C)
21 U.S.C. § 853(p)
28 U.S.C. § 2461(c)

THE UNITED STATES GRAND JURY CHARGES THAT:

At times relevant to this Indictment:

1.      The defendants devised and carried out a scheme to defraud federally funded health care benefits collected within Minnesota's Housing Stability Services Program. That was a program designed to help people with disabilities and addictions find and maintain housing. Rather than provide such help, the defendants obtained and misappropriated millions of dollars in program funds that were intended as reimbursements for services provided to those people.

A.      **Background on Minnesota's Housing Stability Services Program**

2.      In July 2020, Minnesota became the first state in the country to offer Medicaid coverage for Housing Stabilization Services. The Housing Stabilization Services Program is a Medical Assistance (that is, Medicaid) benefit designed to help people with disabilities, including seniors and people with mental illnesses and substance use disorders, find and maintain housing.

SCANNED
SEP 1 7 2025
U.S. DISTRICT COURT MPLS

*United States v. Aden, et al.*

3.    The Program permitted reimbursements for four principal kinds of services:

(a) Housing consultation, during which a consultant (like a social worker or nurse) helps a beneficiary complete a Department of Human Services form called a "Person-Centered, Housing Focused Plan." The Plan is a form available from the Department of Human Services. It requires minimal information. Consultants could bill Medicaid about $174 for a consulting session.

(b) Housing transition services, during which a provider helps a beneficiary plan for, find, and move into housing. Providers can bill about $68 per hour of transition services provided.

(c) Housing sustaining services, during which a provider helps a beneficiary keep their housing after they have moved in (including through behavioral management of the beneficiary). For sustaining services, too, providers can bill about $68 per hour.

(d) Moving expenses of up to $3,000, subject to conditions.

4.    By design, the Program had a low barrier to entry for new providers. A would-be provider needed only be at least 18 years old, submit some enrollment paperwork to Minnesota Department of Human Services (DHS), undergo a background check, and complete about five hours of online training videos. Providers did not have to have a medical license or social work training.

5.    Similarly, the Program had a low barrier to entry for beneficiaries. Beneficiaries needed only be at least 18 years old, have coverage under Medical Assistance (which is Minnesota's Medicaid program for people with low income), have a documented disability or "disabling condition," and be experiencing housing instability. Program rules defined those final two conditions expansively. To receive billable services, a beneficiary meeting these requirements just needed to complete, with a Program-qualified consultant, a document called a Housing Focused Plan,

*United States v. Aden, et al.*

detailing their housing challenges and needs. That done, the beneficiary could enroll with a provider. And the provider could start billing for services provided.

6. To bill, a provider needed to submit only the names of the beneficiaries serviced, the types of billable services provided, and the hours worked.

7. The HSS Program's low barriers to entry and minimal records requirements for reimbursement combined to make the Program susceptible to fraud.

8. Before the Program's inaugural year, DHS predicted the Program would cost about $2.6 million annually. That proved to be inaccurate. In 2021 alone, the Program paid out more than $21 million in claims. That figure ballooned in the following years: $42 million in 2022, $74 million in 2023, $104 million in 2024. In just the first six months of 2025, the Program paid out another $61 million.

9. A federal investigation revealed that many Program providers defrauded the system. These providers acquired the names of Program-eligible beneficiaries from facilities like addiction treatment centers. They then used those individuals' information to submit inflated and fake reimbursement claims. In this fashion, the providers acquired substantial pay-outs of taxpayer money to which they were not entitled. They used those ill-gotten gains for their own enrichment.

**B.    The Defendants and Their Roles**

10. MOKTAR HASSAN ADEN registered a company called Brilliant Minds Services LLC (Brilliant Minds) with the Minnesota Secretary of State in or about October 2020. In or about April 2022, ADEN and his co-defendants, KHALID DAYIB and MUSTAFA ALI, completed paperwork to enroll Brilliant Minds as an HSS Provider.

3

*United States v. Aden, et al.*

11. ADEN, DAYIB, and ALI worked together with ABDIFITAH MOHAMED to operate Brilliant Minds Services LLC as a provider in the HSS Program.

12. ABDIFITAH MOHAMED also operated another Program provider. That company was called Foundation First Services LLC. MOHAMED registered Foundation First with the Minnesota Secretary of State in or about May 2023. Through Foundation First, MOHAMED claimed to provide consultation services to other HSS providers, including Brilliant Minds. There was a demand for such services because HSS Program rules required each beneficiary to undergo a brief housing consultation before receiving other reimbursable services from a Provider. Foundation First was paid through the HSS Program for the consultation services it claimed to have provided.

13. The defendants, along with their employees at Brilliant Minds, were supposed to provide housing consulting, transitioning, and sustaining services to qualifying people in need. Brilliant Minds was paid at quarter-hourly rates and with Medicaid dollars based on the services it claimed to provide.

14. In all, between approximately September 2022 and April 2025, Brilliant Minds submitted reimbursement claims totaling about $2.3 million.

15. Between approximately May 2023 and April 2025, Foundation First submitted reimbursement claims totaling about $222,000.

*United States v. Aden, et al.*

### The Scheme to Defraud the Housing Stability Services Program

16.    From in or about October 2020 through in or about April 2025, in the State and District of Minnesota, and elsewhere, the defendants,

**MOKTAR HASSAN ADEN,**
**MUSTAFA DAYIB ALI,**
**KHALID AHMED DAYIB,** and
**ABDIFITAH MOHAMUD MOHAMED,**

and others known and unknown to the grand jury, did knowingly devise and participate in a scheme and artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts.

17.    The purpose of the scheme was to fraudulently obtain millions of dollars in Housing Stability Services Program funds by causing the submission of fake and inflated bills. The defendants were responsible for providing program-eligible housing services through Brilliant Minds to people in need. However, in furtherance of the scheme, the defendants and their conspirators caused the submission of false claims information that significantly overrepresented the hours of services they provided. In so doing, the defendants received HSS Program funds that substantially exceeded the services they and their company provided.

18.    In furtherance of the scheme to defraud, in or about April 2022, ADEN, DAYIB, and ALI submitted paperwork to DHS for Brilliant Minds to operate as an HSS provider. The defendants thereafter purported to service individuals in need through Brilliant Minds from an office suite in the Griggs-Midway Building in St. Paul, Minnesota.

*United States v. Aden, et al.*

19.    Also in furtherance of the scheme, for much of the time that the defendants operated Brilliant Minds, MOHAMED operated Foundation First Services. Like Brilliant Minds, MOHAMED operated Foundation First from an office suite in the Griggs-Midway Building. Foundation First generated consultation paperwork using the names of Program beneficiaries. By doing so, Foundation First enabled other HSS providers, including Brilliant Minds, to bill for services purportedly provided to those beneficiaries. Some of the consultation paperwork Foundation First generated was fabricated.

20.    Between about September 2022 and March 2023, ADEN and ALI completed paperwork to enroll Brilliant Minds with Company A—an electronic health records company. Using Company A's services, Brilliant Minds submitted HSS Program reimbursement claims to about nine different insurers.

21.    Ultimately, the defendants claimed to service nearly 350 different beneficiaries through Brilliant Minds and for such services claimed to be entitled to nearly $2.3 million. From such claims, in 2024, Brilliant Minds LLC was one of the ten highest-billing HSS providers state-wide.

22.    But in reality, the defendants' operations at Brilliant Minds provided only a fraction of their claimed total.

23.    The defendants diverted some of those taxpayer dollars to their conspirators, and they kept much for themselves. At times in the scheme, all four defendants had control of the Brilliant company bank account, into which their claimed HSS reimbursements flowed. From about April 2023 through about

*United States v. Aden, et al.*

May 2025, each of the defendants personally pocketed between about $300,000 and $400,000 from Brilliant Minds.

24.     The defendants also shared a Platinum American Express credit card, on which they accrued nearly half a million dollars in charges to fund and enhance their lifestyles. The defendants paid those charges using Brilliant Mind's company accounts.

### Counts 1-6
(Wire Fraud)

25.     Paragraphs 1 through 24 are incorporated herein.

26.     On or about the dates listed below, in the State and district of Minnesota and elsewhere, the defendants,

**MOKTAR HASSAN ADEN,**
**MUSTAFA DAYIB ALI,**
**KHALID AHMED DAYIB,** and
**ABDIFITAH MOHAMUD MOHAMED,**

and others known and unknown to the grand jury, for the purpose of executing the scheme described above, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Date (on or about) | Wire Details |
|---|---|---|
| 1 | September 8, 2022 | An email from Brilliantmindservices@gmail.com attaching a document named, "MNeConnect_Client_ONBOARDING_SHEET.pdf" |
| 2 | March 17, 2023 | An email to Brilliantmindservices@gmail.com with the subject, "Invoice 20242 from [Company A]" |
| 3 | April 18, 2023 | An email to Brilliantmindservices@gmail.com with the subject, "Your TIN registration was successful and next steps." |

*United States v. Aden, et al.*

| 4 | April 25, 2023 | An email from Brilliantmindservices@gmail.com with the subject, "Re: Code." |
| 5 | June 26, 2024 | An email from Foundation First Services to Brilliantmindservices@gmail.com with the subject, "Housing Consultations." |
| 6 | October 17, 2024 | An email from Brilliantmindservices@gmail.com attaching two documents, one named "Provider_EFT.pdf." |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

27.     Counts 1 through 6 of this Indictment are incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) in conjunction with Title 28, United States Code, Section 2461(c).

28.     If convicted of any of Counts 1 through 6 of this Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense charged.

29.     If any of the above-described forfeitable property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p) as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL

_____          _____
ACTING UNITED STATES ATTORNEY          FOREPERSON

8